**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:23-CV-208**

| | | |
|---|---|---|
| **RONALD THAXTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT** |
| | ) | |
| **HALCYON GROUP** | ) | |
| **INTERNATIONAL, LLC; ECHELON** | ) | |
| **SERVICES, LLC; ECHELON** | ) | |
| **SERVICES NHO, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

NOW COMES the Plaintiff, by and through his attorneys, and files this Complaint against Defendant, Halcyon Group International, LLC, (hereafter "HGI"); Defendant Echelon Services, LLC (hereafter "ES"); Echelon Services NHO, LLC (hereafter "ESHO"), alleging as follows:

**JURISDICTION**

1.     The Plaintiff is asserting claims for legal and equitable relief arising under Title VII of the Civil Rights act of 1964, *as amended*, 42 U.S.C § 2000e, et seq. (Title VII) and 42 U.S.C. § 1981. This Court has jurisdiction over these claims under 28 U.S.C. § 1331.

2.     The Plaintiff is also asserting claims arising under the laws of the State of North Carolina, including N.C.G.S. § 143-422.2. These claims have a common nucleus of

operative fact with the Plaintiff's federal claims and this court has jurisdiction over them under 28 U.S.C. § 1367.

## VENUE

3.     This Court is the proper venue for this action under 28 U.S.C. § 1391.

## PARTIES

4.     The Plaintiff is a citizen and resident of Fayetteville, North Carolina. At all times relevant to this action, he was a citizen and resident of Cumberland County, North Carolina. Plaintiff was an employee of Defendants as defined by Title VII, 42 U.S.C. § 1981, and North Carolina law.

5.     Defendant HGI, headquartered in Woodbridge, Virginia, is a military defense contractor and "sub-contractor," doing business in the Eastern District of North Carolina, throughout the United States, and in various countries across the world employing in excess of twenty-five employees at all relevant times to this litigation. Plaintiff's tax form W-2 identifies Defendant HGI as his employer for tax purposes.

6.     Defendant ES, headquartered in Manassas, Virginia, is a military defense contractor and "prime contractor," doing business in the Eastern District of North Carolina, throughout the United States, and in various countries across the world employing in excess of twenty-five employees at all relevant times to this litigation.

7.     Defendant ESHO, headquartered in Manassas, Virginia, is a military defense contractor and "prime contractor," doing business in the Eastern District of North Carolina, throughout the United States, and in various countries across the world

employing in excess of twenty-five employees at all relevant times to this litigation. Upon information and belief, ESHO is a wholly owned subsidiary of ES.[1]

8. The named Defendants operated as a joint employer of Plaintiff, and were Plaintiff's employer as defined by Title VII, 42 U.S.C. § 1981, and North Carolina law.

9. Events giving rise to Plaintiff's claims occurred in the Eastern District of North Carolina, and where the parties reside or do business.

## FACTS

10. The Plaintiff, Ronald Thaxton, 66, is a Black male of African-American descent and color.

11. Plaintiff has over four decades of professional experience in military service and work for defense contractors, including thirty-two years of active-duty service in the United States Army.

12. Plaintiff is a trained and certified Ministerial Advisor by the United States Department of Defense and has over a decade of experience serving as an Advisor or Senior Advisor in countries throughout the world in both a military and citizen capacity.

13. Plaintiff has also served as a Chief of Advisors on contract assignment, including in Afghanistan.

14. Plaintiff was initially employed by Defendants in March 2021 as a Senior Advisor. HGI is listed as Plaintiff's W-2 employer and serves as the "sub" or "sub-contractor" to Defendant ES. Defendant ES is the "prime" or prime contractor for the

---

[1] The named Defendants HGI, ES, and ESHO shall collectively be referred to "Defendants" hereafter unless specifically identified in the subsequent paragraphs or Claims.

advisory missions Plaintiff was hired to work on, and ES is the "prime" contractor with the United States government.

15. While Defendant HGI provided Plaintiff with his paycheck and benefits, Defendant ES and Defendant ESHO primarily oversaw and determined Plaintiff's job duties while Plaintiff was on assignment. Defendant ES had the ability to manage Plaintiff and had the ability to suspend or prevent Plaintiff from continuing to work. Plaintiff's direct supervisor while on assignment in Somalia was an employee of Defendant ES.

16. Defendant ES had the ability to document and evaluate Plaintiff's performance and had the ability to suspend Plaintiff's employment or cease his work as a Senior Advisor.

17. While Plaintiff was on assignment in Somalia, the day-to-day supervision of Plaintiff's work performance was done by Defendant ES.

18. Defendants operated as Plaintiff's joint employer, with the ability of each to control his job duties, assignments, and duration of employment assignment as a Senior Advisor.

19. Defendant ES conducted a bi-weekly status call regarding Plaintiff's work and the activities related to Plaintiff's particular assignment. Defendant would provide guidance and instructions to Plaintiff during these bi-weekly calls.

20. Plaintiff's ability to work on assignments, and earn income while doing so, was contingent upon the approval of all the named Defendants.

21. Plaintiff was a joint employee of Defendants.

22.     During 2021, Plaintiff was deployed by Defendants to Somalia and served as a Senior Advisor for a period of approximately two months. Plaintiff's job duties were related to providing strategic defense advice and counsel to the Somali government.

23.     Plaintiff was praised for his work and was given positive reviews of his job performance.

24.     In January 2022, Plaintiff was again deployed to Somalia to serve as a Senior Advisor to the Minister of Defense for the Somali government.

25.     Plaintiff's performance as a Senior Advisor met or exceeded the objective and reasonable expectations for his position, and he was continuously praised by his supervisors for his professionalism and performance of his job duties.

## Discriminatory Treatment and Conduct by Defendant

26.     In March 2022, Plaintiff was made aware by colleague, who was Hispanic, that a senior member of leadership employed by Defendant ES, Michael O'Hara, who is Caucasian, was taking actions to belittle and denigrate this Hispanic colleague who was being subjected to disparate treatment in comparison to his Caucasian colleagues.

27.     Upon information and belief, Plaintiff's Hispanic colleague was separated from his employment in or about June 2022.

28.     Beginning in or about July 2022, Plaintiff noticed a stark difference in the treatment and communications he was receiving from his supervisors and members of leadership Plaintiff reported to. This included Mr. O'Hara, along with another Caucasian member of Defendant's leadership, John Evans.

5

29.    Plaintiff was subjected to disparate and discriminatory treatment in comparison to his Caucasian colleagues performing the same or similar job duties.

30.    In late July 2022, Plaintiff was falsely accused of wrongdoing after voicing objections to Defendants regarding a nickname for an African interpreter. The interpreter, a Black man of African descent and color, was referred to as *"Blackie"* based on his dark complexion and skin color.

31.    The false accusations regarding Plaintiff's performance by Defendants were made after Plaintiff objected to the blatantly racist and offensive "nickname" for the African interpreter, and were in clear retaliation for his objections and complaints.

32.    In the same time frame, Plaintiff was passed over for a promotion to the role of Executive Program Manager by Defendants in favor of a younger, and less-experienced Caucasian employee.

33.    Plaintiff had more total experience than the Caucasian employee selected for the position, and Plaintiff had previously served in a similar role as a Chief Advisor in Afghanistan.

34.    Despite Plaintiff's objections to racist and discriminatory treatment, Defendants did not take action to quell the unlawful conduct or prevent Plaintiff from further retaliation for objecting to discriminatory treatment.

35.    Plaintiff began to experience escalating discrimination from Defendants, and attempts by Plaintiff's supervisors to mischaracterize and undermine Plaintiff's performance of his job duties in the following weeks.

6

36.     On or about September 17, 2022, Plaintiff, without counsel, attempted to submit an Equal Employment Opportunity (EEO) complaint to the federal government (Department of State - Office of Civil Rights) claiming race discrimination and a hostile work environment on the basis of race.

37.     The following day, September 18, 2022, Plaintiff informed Catherine 'Cas' Dunlap, President of Defendant HGI, and Greg Kern, President of Defendant ES, of the EEO complaint with the federal government and Plaintiff's claims of race discrimination and a racially hostile work environment.

38.     Plaintiff provided Defendants notice of his protected activity, and his desire for the federal government to investigate the unlawful and discriminatory conduct of Defendants.

39.     It was clear to Plaintiff that Defendants were not pleased with Plaintiff for attempting to submit a complaint for discrimination to the federal government and engaging in protected activity.

40.     A week later, on or about September 25, 2022, Plaintiff was informed by the Department of State - Office of Civil Rights, that their agency could not accept his complaint or investigate Plaintiff's claims because he was not a federal employee. Plaintiff was directed to the Equal Employment Opportunity Commission (EEOC) to file a Charge of Discrimination.

41.     Despite the discrimination and retaliation Plaintiff was subjected to, Plaintiff completed his assignment and returned back home to Fayetteville on or about September 26, 2022.

42.     Plaintiff initially contacted the EEOC on or about September 27, 2022.

43.     On September 30, 2022, Plaintiff was informed by Defendant HGI's legal counsel that he was being suspended.  Plaintiff was further informed that his suspension was initiated by Defendant ES' leadership.

44.     As a result of his suspension, Plaintiff was not cleared to participate in the next scheduled assignment starting in January 2023, or in any current work for Defendants.  Plaintiff was not paid any more compensation or benefits by Defendants beginning in early October 2022, and was effectively terminated as of October 1, 2022.

45.     Plaintiff and Defendants had been discussing Plaintiff's next assignment and his availability because of an upcoming family wedding in March 2023.

46.     On October 14, 2022, Plaintiff filed EEOC Charge 570-2022-03395, without legal counsel. Plaintiff named Echelon Services, LLC on the EEOC Charge, and alleged a hostile work environment, race and color discrimination, along with retaliation. (Exhibit 1).

47.     Plaintiff engaged with the EEOC in the investigation of his charge and was interviewed by the EEOC on or about November 8, 2022, without counsel.

48.     On November 27, 2022, Plaintiff received an e-mail form Robert Crowley, Vice-President of Defendant HGI, informing Plaintiff that Defendant ES had informed the United States government Plaintiff would not be returning to Somalia, and was "*temporarily removed*" from Defendants' contract with the federal government.

49.     Plaintiff was informed that he would not deploy for an assignment with Defendants in January 2023, in further retaliation for engaging in protected activity and filing complaints of discrimination.

50.     On January 4, 2023, John Evans, Executive Program Manager for Defendant ES sent an e-mail to Catherine 'Cas' Dunlap stating:

> *I would like to get Ron back on the official schedule on Friday's Sitrep, but I must confirm that Ron's grievance with Echelon has been rescinded. Please Advise.*

51.     Mr. Evans was referring to Plaintiff's complaints of discrimination and retaliation to the federal government and Plaintiff's filing of EEOC Charge 570-2022-03395.

52.     When Plaintiff was forwarded a copy of this e-mail, he responded emphatically that he would not be "rescinding" his complaints of discrimination. Plaintiff was incredulous and refused to succumb to Defendants' blatant and direct retaliation for engaging in protected activity.

53.     Plaintiff has effectively been terminated since October 1, 2022, and prevented from working with Defendants going forward, as a result of discrimination and in engaging in protected activity, including the filing of complaints of discrimination with federal government and EEOC.

54.     Plaintiff has not worked with Defendants since the filing of his complaints of discrimination, including EEOC Charge 570-2022-03395.

55.     Plaintiff has suffered substantial, and growing, economic losses as a result of Defendants' unlawful activity and adverse action.

9

56.     Plaintiff has suffered substantial professional and personal losses as a result of the Defendants' unlawful activity and adverse actions.

## ADMINISTRATIVE REMEDIES

57.     On or about October 14, 2022, Plaintiff filed a Charge of Discrimination (EEOC Charge No. 570-2022-03395) with the Equal Employment Opportunity Commission (EEOC) *pro se* in Raleigh, North Carolina against Defendant ES. Plaintiff's charge alleged race and color discrimination, along with a hostile work environment based on race and color. Plaintiff's charge also alleged retaliation. (See Exhibit 1).

58.     On January 20, 2023, the EEOC issued notice of Plaintiff's Right to Sue with respect to his charge (EEOC Charge 570-2022-03395) against Defendant ES.

59.     On March 15, 2023, Plaintiff filed what has been identified as EEOC charges 433-2023-01797 and 433-2023-01798, alleging discrimination and a hostile work environment based on race and color, age discrimination, and retaliation in violation of Title VII. (Exhibit 2). Those charges are currently being investigated by the EEOC, and this Complaint will be supplemented following the completion of the EEOC's investigation.

60.     Plaintiff has complied with all procedural prerequisites to filing this action.

## FIRST CLAIM FOR RELIEF
### (Title VII – Hostile Work Environment Based on Race and Color against Defendant ES)

61.     Plaintiff hereby incorporates by reference the foregoing paragraphs as if fully set forth herein.

10

62.   Plaintiff is of Black or African American race and color and is within the class of persons protected by Title VII.

63.   Defendant ES took adverse employment actions against Plaintiff, as alleged herein, by creating, allowing, and ratifying a racially hostile work environment, and by failing to take affirmative and effective steps to end the racial harassment to which Plaintiff was subjected once it was reported to them.

64.   At the time he was subjected to this racially hostile work environment, Plaintiff was performing his job in a satisfactory manner.

65.   Plaintiff's race and color were a determinative factor in Defendant ES' decision to take adverse employment action against him.

66.   Defendant ES treated Plaintiff less favorably than other similarly situated, non-minority employees outside of his protected status based on race and color.

67.   At the time Defendant ES took adverse employment actions against Plaintiff, he was performing his job in a satisfactory manner meeting or exceeding the reasonable expectations of his job duties.

68.   As a proximate result of Defendant ES' illegal acts of race discrimination against Plaintiff, Plaintiff has suffered substantial damages, including lost income and benefits and other economic losses; mental anguish and emotional distress; loss of reputation and quality of life; and other damages to be proved at trial in excess of $100,000.00.

69.     Plaintiff is entitled to appropriate relief pursuant to Title VII, including compensatory damages and reasonable attorney's fees and costs for his representation herein pursuant to 42 U.S.C. § 2000e-5(k).

### SECOND CLAIM FOR RELIEF
### (Title VII –Race Discrimination against Defendant ES)

70.     Plaintiff hereby incorporates by reference the foregoing paragraphs as if fully set forth herein.

71.     Plaintiff is of Black or African American race and is within the class of persons protected by Title VII.

72.     Defendant ES wrongfully and intentionally discriminated against Plaintiff, as alleged herein, because of his race in violation of Title VII.

73.     Defendant ES wrongfully and intentionally engaged in discriminatory promotional practices because of Plaintiff's race in violation of Title VII.

74.     Defendant ES treated Plaintiff less favorably than other similarly situated, non-minority employees outside of his protected status.

75.     Defendant ES wrongfully and intentionally engaged in discriminatory employment practices related to the suspension, non-selection of Plaintiff for employment assignments, and termination based on his race on or about October 1, 2022.

76.     Plaintiff's race was a determinative factor in Defendant ES' decision to take adverse employment actions against him, including the suspension, termination, and failure to assign Plaintiff to employment assignments.

12

77. At the time Defendant ES took adverse employment actions against Plaintiff, he was performing his job in a satisfactory manner meeting or exceeding the reasonable expectations of his employers.

78. As a proximate result of Defendant ES's illegal acts of race discrimination against Plaintiff, Plaintiff has suffered substantial damages, including lost income and benefits and other economic losses; mental anguish and emotional distress; loss of reputation and quality of life; and other damages to be proved at trial in excess of $100,000.00.

79. Plaintiff is entitled to appropriate relief pursuant to Title VII, including compensatory damages and reasonable attorney's fees and costs for his representation herein pursuant to 42 U.S.C. § 2000e-5(k).

### THIRD CLAIM FOR RELIEF
### (Title VII- Color Discrimination against Defendant ES)

80. Plaintiff hereby incorporates by reference the foregoing paragraphs as if fully set forth herein.

81. Plaintiff is of Black color and complexion and is within the class of persons protected by Title VII.

82. Defendant ES wrongfully and intentionally discriminated against Plaintiff, as alleged herein, because of his race in violation of Title VII.

83. Defendant ES wrongfully and intentionally engaged in discriminatory promotional practices because of Plaintiff's color in violation of Title VII.

84.     Defendant ES treated Plaintiff less favorably than other similarly situated, non-Black employees outside of his protected status.

85.     Defendant ES wrongfully and intentionally engaged in discriminatory employment practices related to the suspension, non-selection of Plaintiff for employment assignments and promotion, termination, and failure to assign to future employment assignments based on his color.

86.     Plaintiff's color was a determinative factor in Defendant ES' decision to take adverse employment actions against him.

87.     At the time Defendant ES took adverse employment actions against Plaintiff, he was performing his job in a satisfactory manner meeting or exceeding the reasonable expectations of his employers.

88.     As a proximate result of Defendant ES' illegal acts of race discrimination against Plaintiff, Plaintiff has suffered substantial damages, including lost income and benefits and other economic losses; mental anguish and emotional distress; loss of reputation and quality of life; and other damages to be proved at trial in excess of $100,000.00.

89.     Plaintiff is entitled to appropriate relief pursuant to Title VII, including compensatory damages and reasonable attorney's fees and costs for his representation herein pursuant to 42 U.S.C. § 2000e-5(k).

## FOURTH CLAIM FOR RELIEF
### (Title VII- Retaliation against Defendant ES)

90.     Plaintiff hereby incorporates by reference the foregoing paragraphs as if fully set forth herein.

91.     During his employment, Plaintiff engaged in protected activity under Title VII, when he complained about race and color discrimination and a hostile work environment and opposing the unlawful employment practices and conduct of Defendant ES.

92.     Defendant took adverse employment actions against Plaintiff as otherwise alleged herein, and in retaliation for Plaintiff engaging in protected activity, including opposing and complaining to Defendant ES of discriminatory conduct, filing EEOC Charge No. 570-2022-03395, and notifying the federal government of his complaints of discrimination.

93.     Defendant ES suspended, and subsequently terminated Plaintiff in retaliation for engaging in protected activity and in violation of Title VII.

94.     At the time Defendant ES took adverse employment actions against Plaintiff, including Plaintiff's denial of promotion, assignments, and ultimate termination, he was performing his job in a satisfactory manner meeting or exceeding the reasonable expectations of his employers.

95.     As a proximate result of Defendant ES' illegal acts of retaliation against Plaintiff, Plaintiff has suffered substantial damages, including lost income and benefits

15

and other economic losses; mental anguish and emotional distress; loss of reputation and quality of life; and other damages to be proven at trial.

96.     Plaintiff is entitled to appropriate relief pursuant to Title VII, including compensatory damages and reasonable attorney's fees and costs for his representation herein pursuant to 42 U.S.C. § 2000e-5(k).

**FIFTH CLAIM OF RELIEF**
**(Race Discriminaiton in violation of 42 U.S.C. § 1981 against all Defendants)**

97.     Plaintiff hereby incorporates by reference the foregoing paragraphs as if fully set forth herein.

98.     Plaintiff is a member of a racial minority, as a Black of African American citizen of Black or African-American race, ancestry, and descent.

99.     By actions described above, the Defendants intended to, and did, discriminate against Plaintiff on the basis of his race in violation of 42 U.S.C. § 1981, with respect to the terms, conditions and privileges of his employment by failing to promote Plaintiff, subjecting him to disparate treatment in comparison to non-Black or African American colleagues, suspending Plaintiff, and ultimately terminating Plaintiff. Additionally, they discriminated against him by preventing Plaintiff from receiving or working future subsequent employment assignments.

100.    As set forth herein, Defendants created a hostile work environment which was sufficiently severe and pervasive for the Plaintiff based on his race in violation of 42 U.S.C. § 1981.

101.   By the actions described above, the Defendants intended to, and did, discriminate against Plaintiff on the basis of his race in violation of 42 U.S.C. § 1981, with respect to the terms, conditions and privileges of his employment.

102.   As a proximate result of Defendant's illegal acts of Defendants against Plaintiff, Plaintiff has suffered substantial damages, including lost income and benefits and other economic losses; mental anguish and emotional distress; loss of reputation and quality of life; and other damages to be proven at trial.

103.   Plaintiff is entitled to appropriate relief pursuant to 42 U.S.C. § 1981, as amended, including compensatory damages and reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## SIXTH CLAIM OF RELIEF
### (Hostile Work Environment based on Race in violation of 42 U.S.C. § 1981 against all Defendants)

104.   Plaintiff hereby incorporates by reference the foregoing paragraphs as if fully set forth herein.

105.   Plaintiff is a member of a racial minority, as a Black of African American citizen of Black or African-American race, ancestry, and descent.

106.   As set forth herein, Defendants created a hostile work environment which was sufficiently severe and pervasive for the Plaintiff based on his race in violation of 42 USC § 1981.

107.   By actions described above, the Defendants intended to, and did, discriminate against Plaintiff on the basis of his race in violation of 42 U.S.C. § 1981, with respect to the terms, conditions and privileges of his employment by creating a racially

hostile work environment. This included the adverse actions of denial of promotion, employment assignments, and termination of Plaintiff.

108.    As a proximate result of Defendants' illegal acts against Plaintiff, Plaintiff has suffered substantial damages, including lost income and benefits and other economic losses; mental anguish and emotional distress; loss of reputation and quality of life; and other damages to be proven at trial.

109.    Plaintiff is entitled to appropriate relief pursuant to 42 U.S.C. § 1981, as amended, including compensatory damages and reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

## SEVENTH CLAIM OF RELIEF
### (Retaliation based on Race in violation of 42 U.S.C. § 1981 against all Defendants)

110.    Plaintiff hereby incorporates by reference the foregoing paragraphs as if fully set forth herein.

111.    At all times pertinent to this action, Plaintiff was a protected member of a class as an individual of Black race, ancestry, and descent.

112.    As set forth herein, Defendants retaliated against Plaintiff for engaging in protected activity and opposing race discrimination and related unlawful employment practices following Plaintiff's complaints to Defendants regarding race discrimination in the workplace, Plaintiff's complaints to the federal government regarding race discriminaiton, and Plaintiff's Charges of Discrimination with the EEOC.

113.    By actions described herein, the Defendants intended to, and did, retaliate against Plaintiff in violation of 42 USC § 1981, for his complaints of race discrimination

18

and with respect to the terms, conditions and privileges of Plaintiff's employment on the basis of race, including the denial of promotion, employment assignments, and his termination from employment. This also includes Defendants' refusal to consider to future employment opportunities as a result of engaging in protected activity.

114. As a proximate result of Defendants' illegal acts of retaliation against Plaintiff, Plaintiff has suffered substantial damages, including lost income and benefits and other economic losses; mental anguish and emotional distress; loss of reputation and quality of life; and other damages to be proven at trial.

115. Plaintiff is entitled to appropriate relief pursuant to 42 U.S.C. § 1981, as amended, including compensatory damages and reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

### EIGHTH CLAIM FOR RELIEF
### (Termination in Violation of the Public Policy of the State of North Carolina based on Race against all Defendants)

116. Plaintiff hereby incorporates by reference the foregoing paragraphs as if fully set forth herein.

117. The public policy of North Carolina, as expressed in N.C.G.S. § 143-422.2 mandates that employers of fifteen or more employees shall not discriminate on the basis of race. At all times pertinent to this claim, Defendants employed in excess of fifteen employees.

118. Defendants' decision to discharge Plaintiff from employment effective September 30, 2022, constituted a wrongful discharge under the common law in that it violated the public policy of the state of North Carolina as set out in N.C.G.S. § 143-422.2.

119.    Defendants violated the public policy of North Carolina in its termination of Plaintiff's employment because of his Black race effective October 1, 2022.

120.    As a proximate result of Defendants' illegal acts of discrimination against Plaintiff, Plaintiff has suffered substantial damages, including lost income and benefits and other economic losses; mental anguish and emotional distress; loss of reputation and quality of life; and other damages to be proven at trial.

121.    Defendants' acts, as described above, were deceptive, willful and wanton, and evinces an intentional or reckless indifference to and disregard for the civil rights of Plaintiff. Aggravating circumstances concerning Defendant's conduct are provided in ¶¶ 1-56.

### PRAYER FOR RELIEF

1.    The Plaintiff hereby requests that Plaintiff be reinstated to his position with Defendants;

2.    That Plaintiff recover from Defendants all wages, benefits and other compensation to which he is entitled to, including all back pay, front pay, and interest, as allowed by law, in an amount to be determined at trial;

3.    That Plaintiff recover of Defendants compensatory damages in an amount in excess of $100,000.00;

4.    That Plaintiff recover from Defendants the maximum compensatory and punitive damages allowed by law, including pre-judgment and post judgment interest, in an amount to be determined at trial;

5.    That Plaintiff recover the costs of this action, including reasonable attorneys'

fees for his representation herein, as required by 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 1988;

6.     This Court award pre-judgment and post-judgment interest on all amounts recovered herein; and

7.     This Court grant such other relief as it deems just and appropriate.

Plaintiff hereby demands a trial by jury on all issues presented herein.

Respectfully submitted this 18th day of April, 2023.

**ELLIOT MORGAN PARSONAGE, PLLC**

**/s/ Daniel C. Lyon**
Daniel C. Lyon (43828)
300 E. Kingston Avenue, Suite 200
Charlotte, NC 28203
Phone: (704) 707-3705
Facsimile: (336) 724-3335
Email: dlyon@emplawfirm.com
*Attorney for Plaintiff*

21